# UNITED STATES COURT OF APPEALS
## For the First Circuit

_____

### No. 23-1725

ANTONIO RAMOS-CRUZ

Petitioner – Appellee,

v.

LORRAINE MARTÍNEZ ADORNO, in her official capacity;
DOMINGO EMANUELLI HERNÁNZEZ, in his official capacity,

Respondents – Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

_____

## BRIEF FOR RESPONDENTS-APPELLANTS DOMINGO EMANUELLI-HERNÁNDEZ AND LORRAINE MARTÍNEZ ADORNO

_____

**FERNANDO FIGUEROA-SANTIAGO**
Solicitor General of Puerto Rico
USCA No. USCA. No. 1198674
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
E-mail: fernando.figueroa@justicia.pr.gov

**OMAR ANDINO-FIGUEROA**
Deputy Solicitor General of Puerto Rico
USCA No. 1197240
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
Email: omar.andino@justicia.pr.gov

**MARIOLA ABREU-ACEVEDO**
Assitant Solicitor General
USCA No. 1199215
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
E-mail: mariola.abreu@justicia.pr.gov

**CARLOS LUGO-FIOL**
USCA. No. 41677
PO Box 260150
San Juan, Puerto Rico 00926
Telephone: (787) 645-2411
Email: clugofiol@gmail.com

September 15, 2023

# <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

**I. PRELIMINARY STATEMENT**........................................................................8

**II. JURISDICTIONAL STATEMENT**..............................................................13

**III. STATEMENT OF THE ISSUES**.................................................................16

**IV. STATEMENT OF THE CASE** ....................................................................17

**V. SUMMARY OF THE ARGUMENT** ...........................................................27

**VI. STANDARD OF REVIEW**..........................................................................28

**VII. ARGUMENT**..............................................................................................28

**A. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING RAMOS-CRUZ'S REQUEST FOR RELEASE, WITH CONDITIONS, PENDING THE RESOLUTION ON THE MERITS OF HIS SECTION 2254 HABEAS PETITION** ..........................................................................28

    **i.**    **Bail Pending Determination on the Merits of a Section 2254 Petition is an Extraordinary Remedy that requires a showing of: (1) a substantial question of law, and (2) extraordinary circumstances deserving of special treatment in the interests of justice**............28

    **ii.**    **Even if Ramos-Cruz could show that he is presenting a substantial claim on which he is likely to succeed on the merits, which is not the case here, there are no extraordinary circumstances that, in the interest of justice, warrant Ramos-Cruz's release pending disposition of the merits of his habeas petition**...............................32

**CERTIFICATE OF FILING AND SERVICE** ..................................................50

**CERTIFICATE OF COMPLIANCE WITH RULE 32(G)**...............................51

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Legislation:**

28 U.S.C. § 1291 ................................................................................12

28 U.S.C. § 1292 ................................................................................12

**Legislation (Puerto Rico):**

Puerto Rico Law 246-2015 ...............................................................18

Puerto Rico Criminal Procedure
 Rule 192.1 ........................................................................................7

**Federal Rules:**

Rule 23, Fed. R. App. Proc. .............................................................28

Habeas Rules
 Rule 5 ............................................................................ 8, *passim*

**Cases (Federal):**

*Argro v. United States*, 505 F.2d 1374 (2d Cir. 1974).............................................28

*Aronson v. May*, 85 S.Ct. 3 (1964) .................................................. 29, 30

*Boyer v. United States*, 613 F. Supp. 3d 545 (D. Mass. 2020) ........................ 31, 32

*Cherek v. United States*, 767 F.2d 335 (7th Cir. 1985) ................................... 14, 28

*Cohen v. Beneficial Industrial Loan Co.*, 337 U.S. 541 (1949) .............................13

*Dotson v. Clark*, 900 F. 2d 77 (6th Cir. 1990).........................................................13

*Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972) ............................ 12, 28, 29, 30, 32

*Grune v. Coughlin*, 913 F.2d 41 (2d Cir. 1990).......................................................13

*Guerra v. Meese*, 786 F.2d 414 (D.C. Cir. 1986) ....................................................14

*In re Roe*, 257 F.3d 1077 (9th Cir. 2001) ...............................................................41

*Iuteri v. Nardoza*, 662 F.2d 159 (2d Cir. 1981) ................................................ 14, 30

*Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989) .................................................... 13, 31

*Landano v. Rafferty*, 970 F.2d 1230 (3d Cir. 1992) ........................... 13, 27, 30, 32

*Lee v. Jabe*, 989 F.2d 869 (6th Cir.1993) ...............................................................28

*Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2021) ...........................................................30

*Martin v. Solem*, 801 F.2d 324 (8th Cir. 1986)......................................................14

*Morales-Roque v. People of Puerto Rico, Superior Court, Humacao Part*,
   555 F. 2d 606 (1st Cir. 1976).................................................................. 42, *passim*

*Pagan v. United States*, 353 F.3d 1343 (11th Cir. 2003)........................................13

*Pouncy v. Palmer*, 993 F.3d 461 (6th Cir. 2021)............................................. 14, 27

*Rivera v. Concepcion*, 469 F.2d 17 (1st Cir. 1972) .................................. 33, *passim*

*United States v. Sharpe*, 834 F. App'x 823 n. 1 (4th Cir. 2021) .............................14

*United States v. Smith*, 835 F.2d 1048 (3rd Cir. 1987)...........................................14

*United States v. Zimny*, 460 F. Supp. 3d 117 (D. Mass. 2020) ..............................32

*Woodcock v. Donnelly*, 470 F. 2d 93 (1st Cir. 1972)................................. 12, *passim*

# UNITED STATES COURT OF APPEALS
## For the First Circuit

———————————

**No. 23-1725**

ANTONIO RAMOS-CRUZ

Petitioner – Appellee,

v.

LORRAINE MARTÍNEZ ADORNO, in her official capacity;
DOMINGO EMANUELLI HERNÁNZEZ, in his official capacity,

Respondents – Appellants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

———————————————————————————————

**BRIEF FOR RESPONDENTS-APPELLANTS DOMINGO EMANUELLI-HERNÁNDEZ AND LORRAINE MARTÍNEZ ADORNO**

———————————————————————————————

**TO THE HONORABLE COURT:**

**COME NOW** Respondents-Appellants, Domingo Emanuelli-Hernández, in his official capacity, and Lorraine Martínez Adorno, in her official ("Respondents-Appellants" or "Government"), and most respectfully request as follows:

6

# I.     PRELIMINARY STATEMENT

In the late 1980's the Puerto Rican society was shocked by the cold and ruthless murder of a woman, Haydeé Teresa Maymí-Rodriguez ("Maymí") and her two children, Eduardo Enrique and Melissa Morales-Rodriguez ("Eduardito" and "Melissa", respectively) at their home. The three of them were stabbed to death. The children's corpses were found hidden in a refrigerator and a freezer. Maymí's body was in a bathtub. After a full trial and an unanimous jury verdict —which was not even required by the Constitution at the time— found granting Petitioner-Appellee, Antonio Ramos-Cruz ("Petitioner" or "Ramos-Cruz") guilty of three counts of murder and sentenced him to life.[1] Puerto Rico courts were unconvinced that any mistake was made at the trial. After direct review in state court, Petitioner moved for two Rule 192.1 motions for new trial in 2011 and 2016.[2] In the latter petitioner unsuccessfully requested a new trial —alleging that a DNA test performed on one of the victim's underwear acquitted him from the crime. Again, the Puerto Rico appellate courts rejected his arguments. The Petitioner then filed a habeas petition in federal court and asserted various constitutional violations with the same

---

[1] Juan Carlos Meléndez ("Meléndez") was also convicted of killing Maymí and her two children. However, he is not a party to the habeas petition that followed the exhaustion of state remedies.

[2] It refers to Puerto Rico Criminal Procedure Rule 192.1 ("Rule 192.1"). As we explain below in detail, in 2016, the Puerto Rico Court First Instance granted his requested for a new trial. But this decision was vacated by the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court denied certiorari.

arguments related to new DNA evidence that were completely ruled out by the Puerto Rico courts. In reality, Petitioner's claims in federal court are no more than a rehash of his state court filings.

As we explain below, the district court abused its discretion in ordering the petitioner's release pending appeal on the erroneous understanding that Respondents-Appellants did not diligently submit the trial and new trial request hearing translated transcripts relating to state court proceedings. In reaching its decision, the district court regarded Puerto Rico as any other jurisdiction whose state court proceedings are conducted exclusively in English and no transcript translation is necessary. The district court did not consider the governmental procedures needed to cover the extraordinary expenses the certified translations entail here and other related logistical hurdles, like the time and human capital needed for such a project. Much more so if we consider the magnitude and extension of the state court proceedings in this case. Puerto Rico is the only jurisdiction in the United States that conducts it state court proceedings exclusively in Spanish. This is not the typical habeas case in which the Government would comply with Rule 5 with a regular transcript of state court proceedings.

Yet, the record and the governing habeas rules do not support the district court's rationale. The Government has substantially complied with its duty. Rule 5 of the *Rules Governing Section 2254 Cases in the United States District Court*

("Habeas Rules") only require the respondent to file the briefs submitted in state court contesting the conviction, any brief by the prosecution and the opinions, and dispositive orders of the state appellate courts relating to the conviction. It requires the filing of trial or evidentiary hearing transcripts that respondent considers relevant. Still, the record shows that after Petitioner amended his petition because he had not exhausted one cause of action, and after the district court ordered it, on January 30, 2023, the Government filed an amended answer attaching numerous documents, with certified translations in compliance with Rule 5.[3] The Government included the excerpts of the trial transcript that it considered relevant. Until that point Rule 5 did not require further action from the Government.

Later, and for the first time after more than two and a half years after the filing of the original petition, on February 13, 2023, the district court ordered for the first time that "all transcripts of all proceedings in Commonwealth Court pertaining to defendant Ramos-Cuz and all translations shall be provided to petitioner's counsel

---

[3] For example, as accepted by the district court, the response to the amended response contained, among others, the following translated documents: (1) excerpts from the trial transcript; (2) briefs filed by the petitioner before the Puerto Rico courts requesting that state courts vacated his sentence; (3) brief filed by the Puerto Rico Solicitor General; (4) Puerto Rico Supreme Court Judgment; (5) Puerto Rico Supreme Court Opinion and Order; (6) excerpt of order issued by a Puerto Rico Superior Court judge denying petitioners first request for a new trial; (7) minutes from the 192.1 (new trial) hearing held in 2017; (8) certiorari filed by the Government before the Puerto Rico Court of Appeals; (9) excerpt of brief by petitioner before the Puerto Rico Court of Appeals; (10) Puerto Rico Court of Appeals Opinion and Order reversing the decision to grant petitioner's new trial; (11) certiorari petition filed by Ramos before the Puerto Rico Supreme Court, and (12) letter from the trial judge who sentenced Ramos in the 1990's requesting an executive pardon for Ramos.

no later than February 28, 2023."[4] The Government moved for reconsideration and the district court allowed further replies and sur-replies. The motion for reconsideration was fully briefed for decision on March 23, 2023. But the district court did not deny the Government's motion for reconsideration until <u>June 16, 2023,</u> and ordered that it "file the 1992 trial and Rule 192.1 transcripts on the electronic docket no later than July 31, 2023." To fully comply with this order, the Government filed a motion in compliance with order informing that the Puerto Rico Department of Justice was actively locating the funds to obtain a certified translation of the 1992 jury trial, which lasted more than ten full days, and the Rule 192.1 transcripts, but that the current budget does not provide for that kind of extraordinary expense.

Yet, the district court issued an order declaring that the Government had been "lax" to provide transcripts and asked the petitioner to inform whether he should be released pending the resolution of his habeas petition. Once the petitioner requested his release, the Government anew explained the budgetary complications that this extraordinary disbursement entails, including the need for the approval of the Financial Oversight and Management Board for Puerto Rico ("Board"), Puerto Rico's Office of Management and Budget and the local Legislature. After a reply filed by the Petitioner, the Court scheduled a show cause hearing where the Government echoed its previous position pertaining to the budgetary issues that

---

[4] Emphasis in the original omitted.

10

arose once the district court denied the motion for reconsideration on June 16, 2023. It also posited that that it would take three (3) or four (4) months for the translations to be produced and available to petitioner. The district court's immediate release of the Petitioner and an order to produce the ten-day trial certified translation and, for the first time, the "opening statements and closing arguments" followed.[5]

The reality that state court proceedings are conducted in Spanish, the habeas petition amendments, motion practice and particular procedural history of this case, including extensions of time by the parties, and delay from the district, gave rise to the issue before this Court today: whether the district court abused of its discretion when it decided that the set back of some transcript translations related to state court proceedings warrant petitioner's automatic release pending appeal despite that he has been found guilty of three counts of murder beyond reasonable doubt in state court and extraordinary circumstances have not been showed for his release. Since the district court's decision disregarded important factual and legal considerations, an abuse of discretion is clearly present here.

Thus, this Honorable Court should vacate the district court's order of release pending final resolution on the merits of Ramos-Cruz's habeas petition; and order

---

[5] The district court stayed the release of Petitioner for seven days to allow the Government to file an appeal. The Government moved for an emergency petition for a stay pending appeal before this Court on August 31, 2023, before this Court. However, it was denied on August 31, 2023, with an order of expedite briefing.

his immediate surrender to state authorities for expedite re-entry to prison while his habeas petition is considered by the district court.

## II.　JURISDICTIONAL STATEMENT

This is an appeal from an order of the United States District Court for the District of Puerto Rico granting Ramos-Cruz's release, with conditions, pending final resolution of his section 2254 habeas corpus petition. The district court entered the order of release on August 25, 2023. **Addendum ("Add.") 1-2.** During the hearing held on August 25, 2023, the Commonwealth moved for reconsideration of the order of release in open court and the district court denied the request. **Add. 2**. The Commonwealth filed a timely *Notice of Appeal* on August 29, 2023. **Appendix ("App.") 16-17.**

In *Woodcock v. Donnelly*, 470 F. 2d 93 (1st Cir. 1972) (*per curiam*), a two-judge panel of this Court determined that a district court's decision denying bail to a state prisoner pending determination of the merits of a habeas corpus petition is neither a final order that is appealable pursuant to 28 U.S.C. § 1291, nor an appealable interlocutory order specifically enumerated in 28 U.S.C. § 1292. This Court, however, treated the appeal from the district court's denial of bail pending a habeas corpus petition as a petition for writ of mandamus to direct the district court to admit the petitioner on bail. *Id.* at 94. Nonetheless, in *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972), decided shortly after *Woodcock*, this Honorable Court observed

that "[t]o the extent that we indicated a total absence of authority for appellate jurisdiction in *Woodcock*, we may have taken too absolute a stand." *Id.* at 96 n. 1. In any event, this Court regarded the question as to its appellate jurisdiction "as interesting, but unimportant," explaining that:

> Concededly we have original jurisdiction to issue an order of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), and, of greater consequence, **we are satisfied that the particular jurisdictional source is immaterial to the substantive issue**. Whatever the basis of our power, petitioners must carry an exceptional burden before we can reverse the district court. We observe, however, that sound practice would seem to suggest resort to original rather than appellate jurisdiction. *Id.* at 96-97. (Emphasis added).

Notably, except for this Court and the Ninth Circuit,[6] every circuit to take up the issue has ruled that bail orders in post-conviction review proceedings are appealable orders under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Co.*, 337 U.S. 541, 545-547 (1949). *See, e.g.*, *Pagan v. United States*, 353 F.3d 1343, 1345-1346 (11th Cir. 2003); *Landano v. Rafferty*, 970 F.2d 1230, 1237 (3d Cir. 1992) ("[R]ather than being an unappealable interlocutory order, the court's order granting bail pending disposition of a habeas petiti0on is plainly appealable as a collateral order."); *Dotson v. Clark*, 900 F. 2d 77, 77-78 (6th Cir. 1990); *Grune v. Coughlin*, 913 F.2d 41, 43 (2d Cir. 1990) ("For substantially the same reasons that an order granting bail pending disposition of habeas petition is an

---

[6] The Ninth Circuit has construed such appeals as petitions for writs of mandamus. *See Land v. Deeds*, 878 F.2d 318 (9th Cir. 1989).

appealable collateral order, we believe that an order denying bail meet the requirements of the collateral order doctrine.") (citation omitted); *United States v. Smith*, 835 F.2d 1048, 1049-1050 (3rd Cir. 1987); *Martin v. Solem*, 801 F.2d 324, 328 (8th Cir. 1986) ("We conclude the release order, even though interlocutory, is final, and thus appealable, because it is a collateral order."); *Guerra v. Meese*, 786 F.2d 414, 418 (D.C. Cir. 1986) ("The bail decision falls within the collateral order doctrine and is thus immediately reviewable."); *Cherek v. United States*, 767 F.2d 335, 336-337 (7th Cir. 1985); *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2nd Cir. 1981) (holding that the state may appeal from an order granting bail pending habeas litigations under the collateral order doctrine.).[7] As the Second Circuit has succinctly explained:

> There are compelling reasons to entertain appeals by the Government from orders granting bail in habeas corpus proceedings where, as here, incarceration has resulted from a conviction. Because of the conviction, the Government has a justified interest in [the habeas] petitioner's continued incarceration, and [the] petitioner has the burden of showing why bail is warranted.
>
> The object of habeas corpus proceedings is freedom from incarceration. Release on bail supplies [at least in part] the sought-after remedy before the merits of [the] petitioner's application are determined. If review of the grant of bail must await the district court's decision on the habeas corpus application, the review will be

---

[7] *See also*, *e.g.*, *Pouncy v. Palmer*, 993 F.3d 461, 464-465 (6th Cir. 2021) ("[T]his appeal concerns a 'collateral' question: whether the petition should be released while the district court considers the merits."); *United States v. Sharpe*, 834 F. App'x 823 n. 1 (4th Cir. 2021) ("We have jurisdiction over the appeal pursuant to the collateral order doctrine.").

substantially meaningless. *Luteri v. Nardoza*, 662 F.2d 159m 161 (2nd Cir. 1981) (citations omitted).

Respondents respectfully submit that the order of the District Court for the District of Puerto Rico releasing Ramos-Cruz, with conditions, pending final resolution on the merits of his Section 2254 habeas petition, squarely falls under the collateral order doctrine, and since *Woodcock* did not address this question, this Honorable Court is not bound by that precedent. The district court's order effectively leaves without effect a sentence of imprisonment entered by the Puerto Rico courts and sustained at all Puerto Rico appellate levels. The district court finally decided the question of whether Petitioner is entitled to interim relief, this relief does not affect the merits of the action and is clearly unreviewable on appeal from a final judgment. Therefore, this Honorable Court has appellate jurisdiction over the district court's order of release.

### III.    STATEMENT OF THE ISSUES

1.  Whether the district court erred and abused its discretion by ordering Ramos-Cruz's release pending determination on the merits of his Section 2254 habeas corpus petition even though such extraordinary circumstances as warranted release do not exist.

2.  Whether the Respondents' purported delay in producing the certified English translations of the 1992 trial and 192.1 evidentiary hearing transcripts amounts to an extraordinary circumstance justifying Ramos-Cruz's release, on conditions, pending resolution on the merits of his Section 2254 habeas corpus petition.

## IV.    STATEMENT OF THE CASE

This case stems from the triple homicide Maymí and her two minor children, Eduardito and Melissa. **App. 181**. Maymí sustained multiple stab wounds and has placed inside a bathtub, "dressed in a sweatshirt rolled up to her breasts and green shorts, which were unbuttoned." **App. 74**. The culprits also stabbed Eduardito and Melissa to death, hiding the children's bodies inside a refrigerator and freezer. **App. 62**. Petitioner, along with Juan Carlos Meléndez-Serrano ("Meléndez"), was indicted by the Commonwealth of Puerto Rico of three counts of first-degree murder and tried before the Puerto Rico Court of First Instance (PRCFI"). On April 10, 1992, a unanimous jury found Ramos-Cruz and Meléndez guilty of all counts of the indictment, **App. 181-183**, and sentenced them to three consecutive 99-year imprisonment terms. **App. 183**.

Ramos-Cruz appealed to the Puerto Rico Supreme Court ("PRSC"),[8] whom affirmed the convictions on January 26, 1999 (Case CR-93-43 and 93-44), holding that:

> Our independent and impartial examination of the evidence presented has convinced us that there was enough evidence for a jury to be able to infer **that all of the elements of murder in the first degree were present, and to connect the defendants to the crime**. In the first place, evidence was presented of the numerous and vicious wounds inflicted to the three victims and of the fact that the scene of the crime had been altered by transferring the bodies of the children at some point after the

---

[8] The Puerto Rico Court of Appeals did not exist at the time, which provided direct review to the PRSC.

crime. Based on the inflicted wounds, the evidence also showed that the victim tried to defend herself from her attackers. Furthermore, **two witnesses placed the defendants in the home of the victim** at the approximate time at which another witness, the victim's nextdoor neighbor, heard screams of distress coming from the house of the deceased. Said time coincides with the time at which, according to the performed forensic analyses, the crime must have taken place. The evidence of the prosecution also showed that that night the defendants admitted to one of the witnesses that they were designing a plan to enter the house of the victim to have sex with her. To do so, they asked one of the victim's friends for the house keys and asked the victim for a glass of water.

Upon determining that the evidence presented by the Prosecution was sufficient in law for a jury, exercising its duty, **to find the defendants guilty of classic firstdegree murder**, we affirm the verdict.

The jury was the one that saw and heard the witnesses testify. It assigned credibility to said testimonies, decided as to the conflicting evidence presented, and unanimously found the defendants guilty. In the absence of passion, prejudice, bias or clear error, we must not intervene in said decision. **App. 183-184**. (Emphasis added and citations omitted).

On February 10, 2011, Ramos-Cruz and Meléndez moved for a new trial pursuant to Puerto Rico Criminal Procedure Rule 192.1 (Rule 192.1), citing "(1) the alleged inappropriate conduct of Prosecutor Andrés Rodríguez-Elías, and (2) new evidence based on the results of a serological test of three pubic hairs taken from underwear belonging to [Maymí] and one body hair found on a piece of clothing belonging to [Eduardito]." **App 60**. After a hearing, the PRCFI denied the request. Petitioner did not seek review of this resolution.

On January 29, 2016, the Puerto Rico legislature enacted the Post Judgment DNA Analysis Act, P.R. Laws Ann. tit. 34, §§ 4201 *et seq.* This law allowed DNA tests to be performed, at the request of a convicted person, of certain evidence in the possession of the government, among others. Thirty days after the law's enactment, Ramos-Cruz requested that the Puerto Rico Institute of Forensic Sciences ("IFS") perform a mitochondrial DNA ("DNA") analysis of the evidence alluded to in his previous motion for new trial. The PRCFI granted this motion without objection from the Department of Justice. *Id.* After the results were delivered, Ramos-Cruz filed a second motion for new trial pursuant to Rule 192.1. PRCFI Judge Berthaida Seijo-Ortiz conducted a six-day hearing. As part of the evidence, Ramos-Cruz presented the lengthy 1992 trial transcript, without objection from the prosecution. On June 13, 2017, the PRCFI granted Ramos-Cruz's second motion for new trial. The Office of the Solicitor General of Puerto Rico, on behalf of the prosecution, appealed this ruling before the Puerto Rico Court of Appeals ("COA"). On March 13, 2019, a panel of the COA reversed the decision of the PRCFI with the majority vote of two judges, with one judge dissenting. Ramos-Cruz sought review of the COA's judgment before the PRSC, which denied the writ, and two motions for reconsideration filed by Petitioner.

On October 27, 2020, Ramos-Cruz filed a *pro se* section 2254 habeas corpus petition. **App. 18-25**. On December 6, 2020, the Office of the Federal Public

Defender ("FPD"), assumed the legal representation of Petitioner, with leave of the district court. **App. 3, Docket Nos. 12-14**. Respondents were served with process on December 17, 2020. **App. 3, Docket Nos. 23, 25**. Between January 13 and April 22, 2021, Ramos-Cruz filed five motions for extension of time to file an amended petition **App. 35-50**, all of which were granted by the district court. **App. 4, Dockets Nos. 29, 31, 33, 35, 38**. The Amended Petition was finally filed on April 23, 2021. **App. 51-103**.

 **After months of inactivity on Ramos-Cruz's part**, on November 24, 2021, Ramos-Cruz filed an Informative Motion. **App. 105-108**. On November 29, 2021, the district court ordered Respondents to answer the Amended Petition. A**pp. 5, Docket No. 41**. On December 17, 2021, Respondents moved to dismiss Ramos-Cruz's section 2254 petition pursuant to Rule 12(b)(6). **App. 109-130**. On that same date, Respondents filed a motion for leave to file Spanish language documents pending their translation, **App. 176-177**, which the district court granted, allowing Respondents 30 days, until January 18, 2022, to file the translations. **App. 5, Docket No. 48**. On January 18, 2022, Respondents complied with the district court's order and filed the certified English translations. **App. 178-244**.

 Meanwhile, Ramos-Cruz requested two extensions of time to file an opposition to Respondents' motion to dismiss, **App. 5, Docket Nos. 49 and 51**, which the district court granted. **App. 5-6, Dockets Nos. 50 and 53**. On January 25,

2022, *Antonio Ramos's Response in Opposition to Respondents' Motion to Dismiss* was finally filed. **App. 225-245**. On February 1, 2022, Respondents requested leave to file a reply to Ramos-Cruz's opposition, which was granted by the district court. **App. 6, Dockets Nos. 56 and 57**. On February 16, 2022, the Respondents filed a *Reply to Opposition to Respondents' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(B)(6)*. **App. 246-260**.

On September 13, 2022—**nearly 7 months after moving to dismiss**—, the district court entered an *Opinion and Order* denying Respondents' motion to dismiss. **App. 261-303**. Because Ramos-Cruz filed a mixed petition, however, the district court ordered him to either file an amended petition to eliminate the non-exhausted cause of action (*i.e.*, claim four), or move for dismissal of his entire petition without prejudice. **App. 300**. On October 10, 2022, Ramos-Cruz filed a *Second Amended Petition for Relief from a Conviction or Sentence by a Person in State Custody* ("Second Amended Petition"). **App. 304-353**.

On October 11, 2022, Respondents filed a *Motion for Reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure*, arguing that: (1) the petition was time-barred and that Ramos-Cruz failed to meet the necessary burden of proof for the application of equitable tolling; (2) Ramos-Cruz lacked diligence in pursuing habeas relief; and (3) there were no extraordinary circumstances preventing Ramos-Cruz from timely filing. **App. 358-371**. The next day, the district court

denied the Respondents' motion for reconsideration and ordered them to answer the *Second Amended Petition*. **App. 7, Docket Nos. 68 and 69**.

On October 24, 2022, Respondents answered the *Second Amended Petition*. **App. 372-394**. On October 31, 2022, Ramos-Cruz moved to strike the answer, arguing that Respondents' answer violated the provisions of Rule 5 because it did not address the merits of the case. **App. 395-412**. On November 1, 2022, the district court ordered Respondents to reply to Ramos-Cruz's motion to strike. **App. 7, Docket No. 73**. After moving for and the district court granting an extension of time, **App. 7, Docket Nos. 74 and 75**, Respondents filed a *Motion in Compliance with Order in Docket No. 73* ("Motion in Compliance"). **App. 436-444**. In said motion, Respondents informed that they would be filing an amended answer to the *Second Amended Petition* and requested leave to file Rule 5 documents in the Spanish language, pending their translation. *Id.* The next day, the district court granted Respondents' request. **App. 791**.

On January 20, 2023, Respondents filed an *Amended Answer to Second Amended Petition* ("Amended Answer"). **App. 797-824**. Along with the *Amended Answer*, Respondents filed several documents in the Spanish language, **App. 827-870**, for which they requested leave to file pending their certified translation. **App. 826**. Respondents filed several exhibits, mostly parts of the 1992 trial transcript, and included several documents in the Spanish language. On that same date,

Respondents filed certified English translations of various Spanish language documents filed along with their Motion in Compliance, **App. 873-992**, and requested an extension of time to file certified translations of the remaining Spanish language documents filed with their *Motion in Compliance*. **App. 871-872**. Respondents' requests were granted by the district court. **App. 9, Docket Nos. 90 and 91**.

On January 27, 2023, Ramos-Cruz requested an extension of time, until February 10, 2023, to reply to Respondents' *Amended Answer* **App. 9, Docket No. 93**, which the district court granted. **App. 9, Docket No. 95**.

On January 30, February 10 and 28, 2023, Respondents filed several certified English translations of the Spanish language documents filed with their Motion in Compliance and Amended Answer to the Second Amended Petition. **App. 871-1144**.

On February 10, 2023, Ramos-Cruz moved to strike the Amended Answer to the Second Amended Petition, **App. 1155-1159**, asserting that Respondents continued to violate Rule 5 by "[withholding] the two most critical record documents: the transcript of Mr. Ramos' 1992 jury trial and the transcript of the [Rule 192.1 evidentiary hearing on his motion for a new trial." **App. 1156**. On that same day, Ramos-Cruz moved to compel Respondents to "submit both the [1992] trial and Rule 192.1 transcripts." **App. 1146**. On February 13, 2023, the district court

granted Ramos-Cruz's motion to compel, ordering that "[all] transcripts of all proceedings in Commonwealth Court pertaining to defendant Ramoz-Cruz <u>and</u> all translations shall be provided to petitioner's counsel no later than February 28, 2023." **App., 10, Docket No. 104** (Emphasis in the original omitted). On even date, the district court ordered Respondents to respond to Ramos-Cruz motion to strike no later than February 24, 2023. **App., 10, Docket No. 105**.

On February 24, 2023, Respondents filed a *Motion in Compliance with Court Order at Docket No. 105 and Response in Opposition to Motion to Strike at Docket No. 102*. **App. 1160-1167**. Petitioner replied on March 7, 2023, App. 1341-1345, and Respondents sur-replied on March 23, 2023. **App. 1363-1369**.

On February 28, 2023, Respondents move for reconsideration of the district court's order to compel, arguing, that: (i) Petitioner had possession of the transcripts, being that he made ample reference to them in his petition; and (ii) their copy of trial transcripts contained written notations by attorney previously assigned to the case that were protected by work-product privilege, so its copy could not be produced to Petitioner's counsel. **App. 1331-1339**. On June 16, 2023 —**<u>that is, more than three and half months after Respondents move for reconsideration</u>**—, the district court entered an *Opinion and Order* in which, among other things, it denied Respondents' motion for reconsideration, granted Ramos-Cruz's motion to strike the Amended Answer, and ordered Respondents to file "the 1992 trial and Rule 192.1 transcripts

on the electronic docket **no later than July 31, 2023**". **App. 1370-1386**. The district court further specified the relevant days of the 1992 trial transcript that needed to be filed in the docket and translated. *Id.*

On July 31, 2023, Respondents filed *Motion in Compliance with Order in Docket No. 125 and Leave to File Documents in the Spanish Language*. **App. 1387-1389**. Respondents filed the Rule 192.1 hearing transcripts, requested leave to file in the Spanish language. **App. 1390-3824**. Respondents also filed the 1992 trial transcripts and requested leave to file in the Spanish language pending translation. As to the translations of the 1992 trial transcript. *Id.* However, Respondents informed the district court that, due to the volume and the cost it entailed, and the fact that the Department of Justice did not have the budget to assume said costs at the moment, the Puerto Rico Department of Justice was actively seeking alternative external funding, including federal grants, to absorb the cost of said certified translations. **App. 1387-1389.** Respondents noted that the Puerto Rico Department of Justice does not govern its own budget, but the Financial Oversight and Management Board (Board), Puerto Rico's Office of Management and Budget and the Legislature do. Therefore, at that juncture, Respondents could not state a specific date on which the 1992 trial transcript translations would be filed. **App. 1387-1389**.

On August 2, 2023, the district court entered an *Order* in which it noted Respondents' motion and ordered the following:

Because defendants cannot predict when the translations will be filed, because this case has been on the Court's docket since 2020, and because the respondents have been lax to provide the transcripts they must by law provide, the petitioner will inform the Court whether the Court should release him from detention, with conditions, pending the final resolution of this case. **App. 3825-3826.**

On that same date, Ramos-Cruz filed a motion in compliance stating his position as to his release pending resolution of the instant case and requested a brief extension of time to file a memorandum in support. **App. 12, Docket No. 128**. The district court entered an *Order* granting Ramos-Cruz until August 3, 2023 at noon to file his additional memorandum, and ordered Respondents to reply no later than August 10, 2023 at noon. **App., Docket No. 129**.

On August 3, 2023, Ramos-Cruz filed *Petitioner's Motion for Release During the Pendency of Habeas Proceedings*. **App. 3827-3837**. On August 4, 2023, the district court ordered Respondents to respond to Ramos-Cruz's motion for release no later than August 10, 2023. **App. 12, Docket No. 131**.  On August 10, 2023, Respondents filed a *Motion in Compliance with Court Order at Docket Nos. 129 and 131 and Response in Opposition to Petitioner's Motion Requesting Release During Pendency of Habeas Proceedings*." **App. 3863-3877**.

On August 15, 2023, the district court entered an *Order* scheduling a Show Cause Hearing for August 28, 2023, at 9:00 a.m. **App. 13, Docket No. 135**. In said *Order*, the district court specifically requested that, "[i]n addition to counsel Idza Diaz-Rivera, the following Puerto Rico Department Justice attorneys [] be present

at the hearing:" Susana I. Peñagarícano-Brown, Deputy Secretary in Charge of Litigation, and Marcia I. Pérez-Llavona, the Director of Legal Affairs of the Federal Litigation and Bankruptcy Division. *Id.* At the request of Respondents, the court reset the hearing to August 25, 2023. **App. 13, Dockets Nos. 136 and 137**. On August 17, 2023, Petitioner filed a *Reply to Respondents' Position on Pre-Adjudication Release*. **App. 3888-3897**.

On August 25, 2023, the court held the Show Cause hearing, where the parties argued their respective positions. **Add. 1-2**. After argument, the district court: (1) ordered the release of Petitioner, with conditions, until the end of the case, and (2) ordered Respondents to also produce the transcripts of the opening and closing statements made by counsel during Petitioner's 1992 trial, <u>which had not previously been ordered</u>. **Add. 2**. Respondents requested reconsideration of this ruling in open court, and the district court denied the request. *Id.* The district court, however, granted Respondents seven days to file an appeal, and stayed the release order during that period. *Id.* This timely appeal followed. **App. 16-17**.

## V.     SUMMARY OF THE ARGUMENT

This Honorable Court should vacate the district court's order granting Ramos-Cruz's request for release, with conditions, pending resolution on the merits of his habeas corpus petition. Specifically, the district abused its discretion when it concluded that Respondents' purported laxity in producing the certified English

translations of the 1992 trial and 192.1 evidentiary hearing transcripts amounts to an extraordinary circumstance justifying Ramos-Cruz's release pending resolution of his habeas corpus petition.

## VI.    STANDARD OF REVIEW

A district court's determination to grant or deny bail pending resolution of the habeas corpus petition is reviewed for abuse of discretion. *See also*, *e.g.*, *Pouncy v. Palmer*, 993 F.3d 461, 463 (6th Cir. 2021) ("We review a bail ruling for abuse of discretion."); *Landano v. Rafferty*, 970 F.2d 1230, 1238 (3rd Cir. 1992) ("The grant of bail is discretionary with the district judge; this court's review is under the abuse of discretion standard.").[9]

## VII.    ARGUMENT

### A. THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING RAMOS-CRUZ'S REQUEST FOR RELEASE, WITH CONDITIONS, PENDING THE RESOLUTION ON THE MERITS OF HIS SECTION 2254 HABEAS PETITION.

   i.    **Bail Pending Determination on the Merits of a Section 2254 Petition is an Extraordinary Remedy that requires a showing of: (1) a substantial question of law, and (2) extraordinary circumstances deserving of special treatment in the interests of justice.**

---

[9] This Honorable Court has treated appeals from a denial of bail pending decision on the merits on a Section 2255 motion as a petition for a writ of mandamus. *Woodcock,* 470 F.2d at 94. This Court reviews a district court's denial of bail pending a Section 2255 motion only to determine whether the district court acted without jurisdiction or grossly abused its discretion. *Woodcock,* 470 F.2d at 94.

Quite apart from the power of a federal district court or appellate court to release a federal habeas petitioner on bail or otherwise under Rule 23, Fed. R. App. Proc., pending an appeal from a district court decision granting or denying habeas relief, a federal district court has inherent, discretionary power to release a federal habeas petitioner on bail or otherwise pending disposition of the habeas proceeding in the district court. *Woodcock*, 470 F.2d at 94 ("a district court entertaining a petition for habeas corpus has inherent power to release the petitioner pending determination of the merits."). This power is rarely exercised, however, in the absence of exceptional or extraordinary circumstances. *See Cherek*, 767 F.2d at 337 ("a power to be exercised sparingly"); *Argro v. United States*, 505 F.2d 1374, 1377 (2d Cir. 1974) (reserved for "unusual cases").

The reason for parsimonious exercise of the power is obvious.[10] While "[b]efore, and during, trial, the accused enjoys a presumption of innocence, and bail is normally granted," *Glynn*, 470 F.2d at 98, that "presumption fades upon conviction, and can be of no significance after the defendant's appeal has been rejected." *Id.* So, "the state acquires a substantial interest in executing its judgment."

---

[10] *See Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir.1993) ("Since a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case."); *Cherek*, 767 F.2d at 337 ("A defendant whose conviction has been affirmed on appeal…is unlikely to have been convicted unjustly; hence the case for bail pending resolution of his postconviction proceeding is even weaker than the case for bail pending appeal. And the interest in the finality of criminal proceedings is poorly served by deferring execution of sentence till long after the defendant has been convicted.").

*Id.* As such, "[q]uite apart from principles of comity, this combination of factors dictates **a formidable barrier for those who seek interim release** while they pursue their collateral remedies." *Id.* (Emphasis added). As explained by this Honorable Court:

> Both in the district court, and on appeal, in the absence of exceptional circumstances–whatever that may include–the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, but a clear, and readily evident, case on the facts. Merely to find that there is a substantial question is far from enough. *Id.* (citations and footnote omitted).

Accordingly, a habeas corpus petitioner who seeks pre-adjudication relief bears "**a heavy burden**, a burden derived from an appreciation of the particular use they are seeking to make of the writ [of *habeas corpus*]." *Glynn*, 470 F.2d at 97 (emphasis added). Indeed, because the petitioner **"has had a full trial and appeal,"** he stands **"in a very different posture than if there had been no prior judicial determination of his rights."** *Id.* at 97 (emphasis added). As this Honorable Court has noted, "[n]owhere is this more significant than with regard to bail." *Id.* As Justice Douglas pointed out in denying an application for bail in *Aronson v. May*, 85 S.Ct. 3, 5 (1964):

> This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. **It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case** than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. In this kind of case **it is therefore**

> **necessary to inquire whether, in addition to there being substantial questions presented by the appeal, *there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice*.** *Id.* (Emphasis added and citations omitted).

In other words, beyond a "clear case" on both the law and the facts,[11] there must exist "some circumstance making this application exceptional and deserving of special treatment in the interests of justice." *Glynn*, 470 F.2d at 97-98 (citing *Aronson*, 85 S.Ct. at 5). A court considering bail for a habeas petitioner "must inquire into whether 'the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective.'" *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2021) (alterations in the original) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981)). *See Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (bail is appropriate pending a decision in a habeas case "**only** when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.") (citations omitted) (emphasis added).

---

[11] *See Glynn*, 470 F.2d at 98.

To be released on bond pending a decision on the merits of a habeas corpus petition, a petitioner must show (1) a substantial claim of law based on the facts, and (2) extraordinary circumstances justifying special treatment in the interests of justice. Put simply, bail in the context of a prisoner awaiting a decision on the merits of his federal habeas petition "is reserved for extraordinary cases involving special circumstances or a high probability of success." *Land v. Deeds*, 878 F.2d 318, 318-319 (9th Cir. 1989). For these reasons, habeas petitioners are rarely granted release on bail pending disposition of the habeas petition. In sum, "this is an incredibly exacting standard appropriate for extraordinary relief." *Boyer v. United States*, 613 F. Supp. 3d 545, 546 (D. Mass. 2020).

In the instant case, the district court abused its discretion and incorrectly determined that such extraordinary circumstances exist. Furthermore, Ramos-Cruz fails to set forth any claims which would indicate a "high probability of success" on federal habeas review. Accordingly, this Honorable Court should vacate the district court's order of release pending final resolution on the merits of Ramos-Cruz's habeas petition; and order his immediate surrender to state authorities for expedite re-entry to prison while his habeas petition is considered by the district court.

>ii. **Even if Ramos-Cruz could show that he is presenting a substantial claim on which he is likely to succeed on the merits, which is not the case here, there are no extraordinary circumstances that, in the interest of justice, warrant Ramos-Cruz's release pending disposition of the merits of his habeas petition.**

Regardless of the merits of Ramos-Cruz's claims, *on which the district court has not yet ruled*, the district court clearly abuse its discretion in finding that Ramos-Cruz made the requisite showing of "extraordinary circumstances."

As some have observed, very few cases have presented extraordinary circumstances justifying release on bail pending a decision in a habeas corpus petition case,[12] and those that have seem limited to situations where (1) the petitioner's health is seriously deteriorating while incarcerated,[13] (2) the petitioner's sentence would be completed before meaningful collateral review could be had,[14] and (3) **there is an extraordinary delay in the processing of a petition**. *See Glynn*, 470 F.2d at 98.

---

[12] *See United States v. Zimny*, 460 F. Supp. 3d 117, 119 (D. Mass. 2020) ("[F]ederal courts very rarely find exceptional circumstances and very rarely release petitioners before ruling on the merits of their post-judgment claims. Indeed, there seem to be but a handful of decisions in which federal courts have released petitioners pending review of their claims.") (internal quotation marks and citations omitted).

[13] *See, e.g.*, *Woodcock*, 470 F.2d at 94; *Landano v. Rafferty*, 970 F.2d 1230, 1238–1339 (3rd Cir. 1992) (bail warranted because the prisoner was an advanced diabetic who was, under conditions of confinement, rapidly progressing toward total blindness, and the decision did not place the prisoner at liberty, but instead released him to a hospital for immediate treatment).

[14] *See, e.g.*, *Boyer v. City of Orlando*, 402 F.2d 966, 968 (5th Cir. 1968) (bail awarded because sentence was so short that if bail were denied and the habeas petition were eventually granted, the defendant would already have served his 120-day sentence).

In the instant case, Ramos-Cruz alleged, and the district court agreed, that the Government's inordinate set back in submitting the "translated trial and post-conviction transcript for the [the district court's] review" (Docket No. 130 at 1) mounts to an extraordinary circumstance warranting his pre-adjudication release. To that end, in his *Motion for Release During Pendency of Habeas Proceedings*, Ramos-Cruz heavily relied on this Court's decision in *Rivera v. Concepcion*, 469 F.2d 17 (1st Cir. 1972), for the proposition that Respondents purported "two-plus-year delay in procuring and translating the trial record" constitutes an extraordinary circumstance that "justifies Mr. Ramos's release on conditions." Docket No. 130 at 7. He further contended that Respondents' "refusal to produce the trial record in a timely fashion is inexcusable and warrants release given the many times federal courts have admonished the PR-DOJ of its burden of producing the state-court record." Docket No. 130 at 8. In sum, Petitioner misleadingly argued that "the Commonwealth, though no stranger to federal litigation and the Jones Act's 'English only' rule, has failed to produce the trial record *despite over a dozen requests over two-plus years*." *Id.* (Emphasis added). As per Petitioner, "[u]nder these circumstances, the [district] [c]ourt should release Mr. Ramos on bail during the pending of habeas proceedings." *Id.* However, as discussed in further detail below, Ramos-Cruz contentions are misleading, meritless, and belied by the record.

a) **The procedural history of his case clearly shows that Respondents' setbacks in producing the certified English translations of the trial transcripts are justified and do not amount to an extraordinary circumstance warranting Petitioners' pre-adjudication release.**

As the record shows, on October 27, 2020, Ramos-Cruz filed a *pro se* section 2254 petition. (Docket No. 1). *Almost six months later*, on **April 23, 2021**, Ramos-Cruz filed an Amended Petition with the assistance of counsel, the FPD. (Docket No. 39). Pursuant to Rule 5(a) of the Habeas Rules, Respondents were "not required to answer the petition unless a judged so orders." The district court ordered Respondents to answer the Amended Petition on November 29, 2021. (Docket No. 41). On **December 17, 2021**, Respondents filed motion dismiss the Amended Petition. (Docket No. 46). On **September 13, 2022**—*nearly nine months after moving to dismiss*—, the district court entered an *Opinion and Order* denying Respondents' *Motion to Dismiss* (Docket No. 61). Because Ramos-Cruz had filed a mixed-petition, however, the district court ordered him to "eliminate the non-exhausted cause of action (*i.e.*, claim four), or move for dismissal of his entire petition without prejudice." Id. Ramos-Cruz opted for the former course, filing a *Second Amended Petition* on October 10, 2022. (Docket No. 63).

The next day, Respondents requested the district court to reconsider the denial of their *Motion to Dismiss* (Docket No. 65), which the district court denied on October 12, 2022. (Docket No. 68). The district court then ordered Respondents to

answer the *Second Amended Petition*. (Docket No. 69). Respondents filed an *Answer to the Second Amended Petition* on **October 24, 2022**, which they soon amended on **January 20, 2023**. (Docket Nos. 70, 87). While the litigation of this case was ongoing, Respondents filed Rule 5 materials and their certified translations, as allowed by the district court. (Docket Nos. 76, 78, 86, 87, 88, 89, 90, 91, 92, 94, 96, 97, 98, 99, 100, and 107). Therefore, as the record shows, Respondents have substantially complied with Rule 5 of the Habeas Rules.

The crux of the controversy before the district court, which eventually gave rise to this appeal, boils down to the filing of the 1992 trial and 192.1 transcripts on the docket. The issue only became ripe when the district court denied the Government's motion for reconsideration and granted Ramos-Cruz's motion to strike the Government's *Amended Answer to the Second Amened Petition*, **on June 16, 2023**.

As previously mentioned, Rule 5 of the Habeas Rules dictates that an answer is required only when ordered by a judge. But, when an answer is ordered, the rule requires the answer to contain specified elements. Relevant here, Rule 5(c) provides as follows:

> (c) Contents: Transcripts. The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed. **The respondent must attach to the answer parts of the transcript <u>that the respondent considers relevant</u>. The judge may order that the**

**respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished**. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence. (Emphasis added).

As the record shows, in compliance with Rule 5(c) of the Habeas Rules, Respondents' *Amended Answer to the Second Amended Petition* included, among other things, the excerpts of the trial transcript that the Government considered relevant (Docket No. 87). The district court allowed for these portions of the transcript to be filed in the Spanish language, pending their translation (Docket Nos. 88 and 91), and the certified English translations were duly filed on February 10, 2023 (Docket No. 97).

On February 10, 2023, Ramos-Cruz moved to strike the Government's Amended Answer (Docket No. 102). On this same day, Ramos-Cruz moved to compel Respondents to "submit both the [1992] trial and Rule 192.1 transcripts." (Docket No. 101 at 2). On February 13, 2023, the district court granted Ramos-Cruz's motion to compel, ordering that "[a]ll transcripts of all proceedings in Commonwealth Court pertaining to defendant Ramos-Cruz and all translations shall be provided to petitioner's counsel no later than February 28, 2023." (Docket No. 104) (emphasis in the original omitted). On **February 28, 2023**, Respondents moved for reconsideration of the order to compel (Docket No. 109) and actively litigated

the matter.[15] *More than three months later*, on **June 16, 2023**, the district court

entered an *Opinion and Order* denying Respondents' motion for reconsideration of

the order to compel, ordering Respondents to "file the 1992 trial and Rule 192.1

transcripts on the electronic docket no later than July 31, 2023." (Docket No. 125 at

15). Therefore, it was not until the entry of the June 16, 2023, *Opinion and Order*

that the district court ordered the Government to file the 1992 trial transcripts on the

record.

On July 31, 2023, Respondents filed a *Motion in Compliance*, attaching to the

electronic docket the 1992 trial and Rule 192.1 transcripts, both in Spanish. (Docket

No. 126). As to the Rule 192.1 hearing transcripts, the Government requested leave

to file them in the Spanish language and informed the district court that the certified

English translations of the Rule 192.1 transcripts would be completed on September

30, 2023. As to the 1992 trial transcript, Respondents likewise requested leave to

file in the Spanish language pending translation. Respondents, however, informed

the district court that, due to the volume and the cost it entailed, and the fact that the

Puerto Rico Department of Justice did not have the budget to assume said cost, the

Government was actively seeking external funding alternatives, including federal

grants, to absorb the cost of the certified English translations of the 1992 trial

---

[15] In their motion for reconsideration of the order to compel, Respondents argued, among other things, work-product privilege, and actively litigated the matter until the district court entered the *Opinion and Order* denying Respondents' motion.

transcripts. It also explained that its budget is subject to the approval of the Board, the Puerto Rico Office of Management and Budget, and the Legislature. Considering these circumstances, at that juncture, Respondents could not state a specific date on which the certified English translations of the 1992 trial transcripts would be filed.

Despite this unintended setback, on **August 2, 2023**, the district court entered an *Order* noting Respondents' *Motion in Compliance* and ordering Petitioner to "inform the Court whether Court should release him from detention, with conditions, pending final resolution of this case." (Docket No. 127). The district court mentioned the following three reasons for said *Order*: (1) Defendants cannot predict when the translation will be filed, (2) this case has been on the Court's docket since 2020, and (3) Respondents have been lax to provide the transcripts they must by law provide. *Id.* However, based on the procedural history discussed above, the basis for the district court's *Order* was unjustified and an abuse of discretion.

First, while it's certainly true that this case has been on the district court's docket since 2020, the record shows that both Ramos-Cruz and the district court caused or acquiesced in significant portion of the slow up in the resolution of this matter. For example, at the beginning of the case, Ramos-Cruz filed various motions for extension of time to file an amended petition, as well as other motions. After having filed the Amended Petition on April 23, 2021, he was completely inactive until November 24, 2021, for a seven-months delay. This factor, among others, had

to be weighed when deciding whether to release Petitioner pending resolution of his habeas petition. There is no indication that the district court took them into account in reaching its decision. Therefore, contrary to the district court's assertion, it comes to no fault of the Government that this case has been in the docket since 2020, without moving forward. The Government has been far from "lax" in litigating the case, as the record clearly shows.

Second, the district court's contention that Respondents-Appellants "have been lax to provide the transcripts they must by law provide" is unsupported by the record. Pursuant to Rule 5 of the Habeas Rules, Respondents-Appellants were required to provide the Rule 5 materials along with their answer to the petition, **not before**. As the record shows, Respondents filed an *Amended Answer to Second Amended Petition* on January 20, 2023, and attached to it the "parts of the transcript that the [R]espondents consider[ed] relevant," as required by Rule 5(c) of the Habeas Rules. Respondents-Appellants requested and the district court granted leave to file these excerpts of the transcripts in Spanish pending their translation, and they filed the certified English translations on February 10, 2023. That same day, Ramos-Cruz moved to compel the production of the 1992 trial and Rule 192.1 evidentiary hearing transcripts, which the district court granted on **February 13, 2023**. Soon after the district court ordered that "[a]ll transcripts of all proceedings in Commonwealth Court pertaining to defendant Antonio Ramos-Cruz and all translations [] be

provided to the petitioner's counsel" (Docket No. 104), the Government moved for reconsideration of the order to compel, arguing work-product privilege, among other reasons, and actively litigated the matter until the district court denied their *Motion for Reconsideration* in an *Opinion and Order* entered on **June 16, 2023**. (Docket Nos. 109 and 125). Therefore, it wasn't until said *Opinion and Order* that the district court ordered Respondents to "file the 1992 trial and Rule 192.1 transcripts on the electronic docket no later than July 31, 2023". *See* Rule 5(c) of the Habeas Rules ("The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished.").

Respondents filed the 1992 trial and Rule 192.1 transcripts in the electronic docket within the timeframe ordered by the district court. At the same time, Respondents informed the district court that the certified English translations of the 192.1 hearing transcripts would be ready by September 30, 2023, and explained the situation with the certified English translations of the 1992 jury trial transcripts. Nonetheless, during the Show Cause Hearing held on August 25, 2023, Respondents **explained to the district court the process of having the funds available to pay for the translations of the 1992 jury trial transcripts and <u>informed that it would take approximately three to four months for the translations to be produced and available to Ramos-Cruz</u>**. Accordingly, far from being "lax to provide the transcripts that they must by law provide," the Government vigorously litigated the

issues pertaining to the production of the transcripts, and when later ordered to file the transcripts in the electronic docket, it complied. At the same time (*i.e.*, **July 31, 2023**), Respondents informed the district court that the certified English translations of the 192.1 hearing transcripts would be completed and filed by September 30, 2023, and informed the particular situation with the certified English translations of the 1992 jury trial transcripts. Notably, Respondents-Appellants diligently sought and obtained the external funds to pay for the translations of the 1992 jury trial transcripts, and on **August 25, 2023**, informed the district court that it would take approximately three or four months for the translations to be produced and available for Petitioner and the Court. Accordingly, the district court's position that Respondents-Appellants have been "lax to provide the transcripts that they must by law provide" is clearly erroneous and unsupported by the record.[16] Because the district court's decision disregarded important factual considerations, an abuse of discretion is clearly present here.

---

[16] *In re Roe*, 257 F.3d 1077, 1081 (9th Cir. 2001) ("[T]he district court cited the State's 'persistent resistance' to fulfill its discovery obligations as an additional special circumstance warranting release. We observe, however, that the district court has never actually found the State to be in violation of any discovery order in this case. **In any event, <u>ordering the release of a habeas petitioner on bail is, as far as we know, an unprecedented sanction for a State's discovery violations</u>. The district court has numerous other, authorized, means by which it may compel compliance with its discovery orders and expedite the pace of the habeas proceedings**.").

### b) Ramos-Cruz reliance on *Rivera v. Concepcion*, 469 F.2d 17 (1st Cir. 1972), is clearly misplaced.

Ramos-Cruz's heavy reliance on *Rivera*, to argue that Respondents alleged "two-plus-year delay in procuring and translation the trial record justifies [his] release on conditions," is clearly misplaced. First, contrary to Ramos-Cruz's suggestion, in *Rivera*, this Court did not adopt a *bright line rule* that a two-year delay in producing the trial record automatically warrants the petitioner's release on bail. Indeed, in *Morales-Roque v. People of Puerto Rico, Superior Court, Humacao Part*, 555 F. 2d 606 (1st Cir. 1976) (*per curiam*), this Court explicitly refused to adopt the holding that a two-year delay automatically entitled the defendant to a writ of habeas corpus. To that end, this Court noted that the district court had "**misconstrued [its] decision in *Rivera* as holding that the pendency of an appeal for two years automatically requires an order releasing the defendant on bail**." *Id.* at 607. (Emphasis added). Rather, the Court held that such a bright-line approach was inappropriate because "[e]ach case…requires consideration of its individual factors." *Id.*[17] In any event, as discussed above, the procedural history of this case

---

[17] This Court noted that at least two significant factors merit a more studied approach, to wit: "(1) the nonbailable character of the offense under Puerto Rican law, which, while it does not foreclose bail, does suggest that a federal court, as a matter of comity, **should order such release only as a last resort**; and (2) the existence of some evidence that **defendant was himself responsible, in part, for the delay**." *Morales Roque*, 558 F.2d at 607. (Emphasis added). In cases presenting such factors, this Court explained that "the district court should balance the Commonwealth's interest in not admitting a convicted defendant to bail against the petitioner's due process right to a reasonably prompt appeal, and weight the actions of the Commonwealth and the defense which have contributed to the delay." *Id.*

clearly shows that any setback by Respondents in producing the translated trial transcripts does not come even close to a two-plus-years delay.

The Petitioner's reliance on *Rivera* is also misplaced because the facts of that case are fundamentally different. In *Rivera*, the procedural posture of the state prisoner's habeas petition was such that the state prisoner was seeking a ***direct appeal*** of his state conviction before the Puerto Rico courts. *Id.* at 18. Here, however, Ramos-Cruz has exhausted a direct appeal of his state court conviction and two state collateral attacks of his conviction via two Rule 192.1 motions for new trial—all of which were denied—and is presently collaterally attacking his conviction in federal court in his section 2254 petition. In this respect, *Rivera* is inapposite to this case.

Moreover, contrary to what Petitioner seems to suggest, *Rivera* does not establish a categorical right to bail pending review of a state prisoner's conviction due to years-delay in producing trial record, but, instead, simply establishes bail as possible remedy for state prisoner's seeking *direct appeal* of their conviction, when an inordinate delay in their *direct appeal* amounts to a violation of due process. *Rivera*, 469 F.2d at 19. *See also Morales Roque*, 558 F.2d at 606 ("As this court indicated in *Rivera v. Concepcion*, 469 F.2d 17 (1st Cir. 1972), a criminal defendant who is held in custody following his conviction in the trial court of the Commonwealth of Puerto Rico has a right under the fourteenth amendment of the United States Constitution to a reasonably prompt hearing and disposition of his

appeal."). Therefore, since Ramos-Cruz has exhausted his direct appeal and state post-conviction remedies, once again, *Rivera* has no bearing on this case.

Furthermore, in *Rivera*, this Cout affirmed the district court's order of release on bail pending appeal based on "the fact that [after] two years [of incarceration] … the [state-court] stenographers had yet to commence the transcript" for the appeal, *Rivera*, 469 F.2d at 18, which this Court characterized as "**two years of total inaction**…while [petitioners] remain[ed] incarcerated" pending resolution of their *direct appeals*. *Id.* at 19 (Emphasis added). In the instant case, Ramos-Cruz insists that, as in *Rivera*, "[t]he extraordinary circumstance here is Respondents' inaction," Docket No. 139 at 3-4, and their alleged "profligate delays that impede due process of law." Id. at 4. In that vein, he also argued that Respondents alleged "multi-year failure to even start transcribing the trial record" is no different to the "multi-year failure to transcribe a record as th[is] [Court] assessed in *Rivera*…" Docket No. 139 at 3. These contentions, however, are misleading and belied by the record.

As previously explained, Respondents have been actively litigating this case since they filed their *Motion to Dismiss* on **December 17, 2021**. App. ___. Notably, Respondents have vigorously litigated and reconsidered, among other matters, issues regarding the production of the trial transcripts. As the record shows, soon after the district court ordered that "[a]ll transcripts of all proceedings in Commonwealth Court pertaining to defendant Antonio Ramos-Cruz and all translations [] be

44

provided to the petitioner's counsel" (Docket No. 104), Respondents-Appellants moved for reconsideration of the order to compel, arguing work-product privilege, among other reasons, and actively litigated the matter until the district court entered an *Opinion and Order* denying their Motion for Reconsideration. (Docket Nos. 109 and 125). In its *Opinion and Order*, the district court ordered for the first time that Respondents-Appellants "file the 1992 trial and Rule 192.1 transcripts on the electronic docket no later than July 31, 2023," Docket No. 125 at __, which Respondents complied with (Docket No. 126). Therefore, unlike *Rivera*, this case clearly does not involve complete inaction by the Government. Accordingly, Ramos-Cruz's contention that the "[e]xtraordinary circumstance here is Respondents inaction" (Docket No. 139 at 3-4), is simply untrue and non-existent.

Lastly, Ramos-Cruz argument that Respondents alleged "multi-year failure to even start transcribing the trial record," Docket No. 139 at 3, is no different to the "multi-year failure to transcribe a record as th[is] [Court] assessed in *Rivera*," *id.*, is likewise meritless and unsupported by the facts in both *Rivera* and the instant case. In *Rivera*, "**although ordered by the court**," the state court stenographer failed to transcribe the transcript during "two years of total inaction." *Rivera*, 469 F.2d at 18, 20. Here, unlike in *Rivera*, Respondents were not ordered by a court, nor did they had a duty under the Habeas Rules, to begin translating the trial record as soon as they allegedly "had notice that Mr. Ramos's habeas petition was forthcoming" or

when "Respondents were reminded by Petitioner of their duty to translate the record" in February 2021.[18] (Docket No. 139 at 8). Rule 5 of the Habeas Rules dictates that an answer is required only when ordered by a judge. But, when an answer is ordered, the rule requires the answer to contain specified elements. For example, Rule 5(c) requires the state to attach to its answer "parts of the transcript that the respondent considers relevant" and Rule 5(d) requires the state to file a copy of "any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding." In other words, Respondents must provide Rule 5 material along with its answer to the petition, **not before**, and it has no duty to answer before ordered to do so. In the instant case, the district court ordered Respondents to answer the Second Amended Petition no later than October 24, 2022 (Docket No. 69), which Respondents did, and soon after, with prior leave of the Court, filed an *Amended Answer to the Second Amended Complaint* on **January 20, 2023**. (Docket Nos. 76 and 78). Therefore, at

---

[18] It is important to clarify that while Ramos-Cruz insists, throughout various submissions in the district court, that since February 2021, he sent Respondents over a dozen Rule 5 production requests and asked Respondents to begin production of translations of the record, he conveniently omits that, pursuant to Rule 5 of the Habeas Rules, Respondents were required to provide the Rule 5 material along with its answer to the petition, **not before**. In other words, contrary to what Ramos-Cruz would like this Court to believe, Respondents had no duty to produce the documents he requested between February 2021 and October 24, 2022 and, therefore, any alleged failure to respond to the Petitioner's requests by any means can be construed as deliberate refusal in obtaining and translating the state-court record or an extraordinary delay. As such, Ramos-Cruz's contention that "Respondents cannot be said to be engaging in judicial process if they failed to respond to years of requests and remain inactive in the face of t[he] [district] [c]ourt's February and June Habeas Rule 5 orders," is misleading and inflammatory to say the least.

that time, Respondents-Appellants duty to produce the Rule 5 materials was triggered. As such, contrary to Petitioner's suggestion, any setback by Respondents in translating and producing the trial record in this case does not come even close to the "two years of total inaction" in *Rivera* that amounted to extraordinary circumstances warranting the order of release on bail pending appeal.

As the above discussion demonstrates, the alleged extraordinary circumstances, which Ramos-Cruz unsuccessfully tries to support *Rivera*, are non-existent, or at the very least, attributed in part to him. As such, the district court clearly abused its discretion in granting Ramos-Cruz's request for release, with conditions, pending resolution on the merits of his habeas petition.

Any setback by Respondents in producing the certified translations of the transcripts is justified by the extensiveness of the transcripts requested and the severe budgetary restrictions of the Government. And there is certainly no due process violation that could justify the district court's order to release, with conditions, a person who has been convicted of three counts of murder by an unanimous state jury.

**WHEREFORE,** Respondents-Appellants respectfully request that this Honorable Court vacate the district court's order of release pending final resolution on the merits of Ramos-Cruz's habeas petition; and order his immediate surrender

to state authorities for expedite re-entry to prison while his habeas petition is considered by the district court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 15th day of September, 2023.

*s/Fernando Figueroa Santiago*
**FERNANDO FIGUEROA-SANTIAGO**
Solicitor General of Puerto Rico

*s/Omar Andino Figueroa*
**OMAR ANDINO-FIGUEROA**
Deputy Solicitor General

*s/Mariola Abreu Acevedo*
**MARIOLA ABREU-ACEVEDO**
Assistant Solicitor General

*s/Carlos Lugo-Fiol*
**CARLOS LUGO-FIOL**
Counsel for Appellants

## CERTIFICATE OF FILING AND SERVICE

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing and the appendix to this brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. In addition, on this date, five copies of the appendix were sent by priority mail to the clerk of the court pursuant to Federal Rule of Appellate Procedure Rule 25 (d)(2).

In San Juan, Puerto Rico this 15th day of September, 2023.

> *s/Mariola Abreu Acevedo*
> Assistant Solicitor General
> USCA No. 1199215
> P.O. Box 9020192
> San Juan, Puerto Rico 00902-0192
> Telephone: (787) 721-2900
> Email: mariola.abreu@justicia.pr.gov

## CERTIFICATE OF COMPLIANCE WITH RULE 32(G)

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B):

    [x] This brief contains 12,052 words in compliance with Fed. R. App. P. 32(a)(7)(B), excluding the parts of the brief excluded by F. R. App. P. 32(f).

    [ ] This brief uses a monospaced typeface and contains [state the number of] lines of text.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [x] This brief has been prepared in a proportionally spaced typeface using Times New Roman, Size 14.

    [ ] This document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

                       *s/Mariola Abreu-Acevedo*
                       Assistant Solicitor General

                       Dated:  September 15, 2023

# UNITED STATES COURT OF APPEALS
## For the First Circuit

_____

### No. 23-1725

ANTONIO RAMOS-CRUZ

Petitioner – Appellee,

v.

LORRAINE MARTÍNEZ ADORNO, in her official capacity;
DOMINGO EMANUELLI HERNÁNZEZ, in his official
capacity,

Respondents – Appellants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

**ADDENDUM TO BRIEF FOR RESPONDENTS-APPELLANTS
DOMINGO EMANUELLI-HERNÁNDEZ AND LORRAINE
MARTÍNEZ-ADORNO**

---

## <u>TABLE OF CONTENTS</u>

**<u>DOCUMENT</u>                                                    <u>PAGE(S)</u>**

Minute (August 25, 2023)...............................................................**Add 1-2**

| |
|---|
| Hearing set for 9:00 AM |
| Hearing started at 9:35 AM |
| Hearing ended at 10:01 AM |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MINUTES OF PROCEEDINGS:**

**HONORABLE FRANCISCO A. BESOSA, U.S. SENIOR DISTRICT JUDGE**

COURTROOM DEPUTY: Migdalia Garcia-Cosme      Date: August 25, 2023
Court Reporter: Joe Reynosa      Case No. 20-cv-01589 (FAB)

---

Attorneys:

ANTONIO RAMOS-CRUZ      SAFPD Franco Lorenzo Perez-Redondo

AFPD Kevin Lerman

      v.

LORRAINE MARTINEZ-ADORNO      Idza Díaz Rivera

DOMINGO EMANUELLI-HERNANDEZ

---

The case was called for a Show Cause Hearing.

SAFPD Franco Perez-Redondo, and Appellate Attorney Kevin Lerman were present representing the Petitioner. Ms. Idza Díaz Rivera, Attorney from the Department of Justice of Puerto Rico, Federal Litigation Division was present representing the Respondents. Also present were Ms. Susana I. Peñagarícano-Brown, Deputy Secretary in Charge of Litigation at the Department of Justice of Puerto Rico, and Ms. Marcia I. Pérez Llavona, Director of Legal Affairs of the Federal Litigation and Bankruptcy Division at the Department of Justice of Puerto Rico. In the courtroom was Ms. Isabel Castro-De Leon, Petitioner's spouse.

The Court began by inquiring about the trial transcripts and asked how long it will take to produce said transcripts. Attorney Díaz responded that transcripts were done in Spanish and were pending to be translated. Attorney Díaz, along with Attorney Peñagarícano explained to the Court the process of having the funds available to pay for the translations and informed that it would take approximately three (3) or four (4) months for the translations to be produced and available for the Petitioner. AFPD Lerman and SAFPD Perez objected and argued that an extraordinary delay was caused by the respondents while the petitioner remains imprisoned. SAFPD Perez finalized his argument by requesting the immediate release of the Mr. Ramos.

**Add. 001**

20-cv-01589 (FAB)
Ramos-Cruz v. Carrau-Martinez et al

**After considering the position of the parties, the Court ordered the following:**

1. **Respondents shall produce the translation of the 10-day trial and shall include the opening statements and closing arguments.**

2. **The Court ordered the release of Mr. Antonio Ramos-Cruz today, under the conditions originally imposed by Judge Berthaida Seijo, and added Ms. Isabel Castro-De Leon as a third-party custodian. SAFPD Perez and AFPD Lerman shall coordinate the release of Mr. Ramos and inform the Court as soon as possible.**

Attorney Díaz moved the Court for the reconsideration of the order of release. The Court denied the request. Attorney Díaz then proposed additional conditions of release for the Court's consideration.

**The Court's order of release will remain unchanged but will be <u>STAYED for seven (7) days</u>, to allow the Respondents time to file an appeal.** The parties shall provide the courtroom deputy the addresses to which these minutes shall be sent.

*S/ Migdalia Garcia-Cosme*
Courtroom Deputy Clerk

**Add. 002**